The next case we're going to hear is Durden v. United States, and Mr. Corson, whenever you're ready, we'll hear you to introduce. Thank you, Your Honor, and good morning. May it please the Court, John Corson from the Wake Forest Law School Appellate Clinic, and it's my pleasure under Local Rule 46A to introduce the two third-year law students who are here today on behalf of the plaintiff, Maria Durden. First, Nathan Harrell, a third-year student who will address the Court and your questions in just a minute, and also with us, Jennifer Skinner, a third-year law student who's been the rest of the team preparing for the oral argument. Thank you, Your Honors. She's the lawyer and he's the oral advocate. Welcome. We'll hear from Mr. Harrell. May it please the Court, my name is Nathan Harrell, and I represent Plaintiff Maria Nicole On December 13, 2009, Plaintiff was attacked by an employee of the United States government. At a minimum, this Court should remand the case to the District Court and allow Plaintiff discovery to further discover the jurisdictional elements of this case. At issue today is whether the Federal Tort Claims Act confers jurisdiction over Plaintiff's negligence claims. Plaintiff submits three reasons.  Yes, Your Honor. The Court can handle these things pretty liberally. We don't have any fact-finding, necessarily, by a fact-finder in the traditional sense, like a jury. It's a question for the Court, and it can decide its own facts. If it wants evidence, it can have them. It can look at the materials. And that goes to the power of the Court. I think the difficult question in this case that you raise is whether this is a 12B1 case or a 12B6 case. Because if, for instance, if a claim requires that the person involved be a national bank, and that's not alleged or proved in a case, some people argue that's jurisdictional. Well, it is the federal courts have jurisdiction under federal question. But here we have jurisdiction under 1346, is it? Yes. 1346, because it's a federal claim against the United States. The question I have really is, at the inception, is this really a 12B6 where the tort claim is not made out, or the challenge to the tort claim, or 12B1, which is jurisdiction, and which gives the Court a lot of latitude, the District Court. Your Honor, at present, we are on a 12B1. However, this Court in the United States v. Kearns noted that on a 12B1, there is a special issue at present, where the jurisdictional and meritorious facts of a claim are intertwined, the District Court is limited in its ability to decide the 12B1 motion. Here we have such an intertwined nature between the jurisdictional facts and the facts that speak to the merits of the FTCA claim. Well, if it goes to the power of the Court, we don't have a right to make any decision under Steel Company. I mean, it seems to me if we just can't sit on the case, if we get a domestic relations case and we recognize it's a domestic relations case, we throw it out. We can't go any further. Or if it's not a federal claim under federal law, we throw it out. So the question is, when can we adjudicate and how much can we adjudicate? And your suggestion is that we can put the jurisdiction on hold and wait until the facts are found on the merits of the claim. That's been explicitly prohibited, assuming jurisdiction recently by the Steel Company case. Your Honor, we have jurisdiction in this case. We argue that the District Court erred in its application of the intentional tort doctrine in moving forward and adjudicating the facts of this case. However, we do have jurisdiction in this case. Again, based on United States v. Kearns, that when the District Court adjudicated the 12B1 motion, its ability to reach beyond jurisdiction and decide the merits of the case was limited. However, we do have jurisdiction. In discussing how the Kearns Court discussed how a 12B1 motion must be adjudicated, there are two applications of a 12B1 motion that are present in the present situation. Let me just toss in another question. It makes it even more complex. The Tort Claims Act goes to the sovereign immunity of the United States. And when the United States chooses not to be sued, it's jurisdictional, right? Yes, Your Honor. That is jurisdictional. And the United States says this is an issue about whether this case falls within the class of cases on which it has consented to be sued and is a question of sovereign immunity and should be decided at the inception of the case as a jurisdictional question. What's your answer to that? Yes, Your Honor. Even deciding the jurisdiction at the inception of the case, we have jurisdiction in this case. The only possible way that jurisdiction could be removed in this case is the Intentional Tort Doctrine. The Supreme Court in Sheridan made it clear that the Intentional Tort Doctrine would not remove jurisdiction in this case. Looking at how the Supreme Court in Sheridan did apply the Intentional Tort Doctrine, the first step in Sheridan's analysis requires us to separate the two acts of tortious conduct in this case. On the one hand, we have the Intentional Act of Aaron Purnell. The second act of tortious conduct that actually occurred before this intentional conduct happened was the government's negligence in allowing the foreseeable assault and battery to occur. Now that we've separated the two acts of tortious conduct, Sheridan tells us that where the intentional conduct does not otherwise fall within the FTCA's general waiver of sovereign immunity, then the second act, which is independent of this intentional conduct, is not barred by the Intentional Tort Doctrine. Therefore, the only possible way that jurisdiction could be removed at the inception of this case is the Intentional Tort Doctrine. Sheridan is clear in that the Intentional Tort Doctrine is unavailable in the present case. So therefore, we have jurisdiction. Where the District Court erred is in stepping beyond this jurisdiction and reaching the merits of this case. Again, looking at how the Kearns Court determined that a 12B1 motion, how it can be adjudicated at the District Court level, there are two scenarios applicable. First, the District Court had the ability to treat this as an attack by a defendant on the truthfulness of plaintiff's allegations in the complaint. Under this situation, the District Court was to attach a presumption of truthfulness to the allegations in the complaint. The District Court did not attach a presumption of truthfulness to the allegations in the complaint. Again, under this scenario, the District Court was to conduct an evidentiary hearing before resolving factual disputes. What is the claim, the state claim, tort claim that you're making? Your Honor, there are three claims under North Carolina law, which is the governing law. Both parties agree in this situation that we make. One is a landlord-tenant duty. The second is a duty to control based on the special relationship between Aaron Purnell and the government. The third is a duty based on the government's affirmative conduct and voluntary undertaking in taking this task of controlling Aaron Purnell. Looking at the first duty under North Carolina law, the landlord-tenant duty, North Carolina law clearly imposes a duty upon landlords to prevent foreseeable criminal acts that occur on the premises. Looking at the crux of this test, at the heart of this landlord-tenant duty is foreseeability. The North Carolina test is not narrow in the sense that the defendant must foresee the exact form of the injury that actually occurred. The defendant must only foresee that some injury or consequences of a generally injurious nature must occur based on Purnell's prior conduct. Looking at Purnell's prior conduct, it is clear that a basis for foreseeability can be established. The government was well aware that Aaron Purnell left at all hours of the night and used drugs and alcohol both on and off Fort Bragg. Again, the government was well aware that on September 11, 2009, Aaron Purnell broke into an occupied home, assaulted the female occupant, all of which occurred in front of her children. But doesn't the tortious act must occur, must be tied to the premises under your first theory of foreseeability? No, Your Honor, the tortious act does not have to be tied to the premises. In brief, the district court cited Davenport for that proposition. Davenport dealt with a logical extension of the landlord-tenant duty in formulating a duty to evict. Plaintiff does not claim a duty to evict here. What's the act on the premises then? Your Honor, for one, Aaron Purnell did leave the premises to use drugs and alcohol. Therefore, we do see an act that occurred on the premises before he made it off the premises to use these drugs and express his intention to kill himself and 11 other members of his unit. Certainly, this was to happen on the premises of Fort Bragg. So even under a narrow test that would restrict this to the premises, we do have a basis for foreseeability. So a landlord-tenant, your theory is that the entire Fort Bragg are the premises of the leasehold? Absolutely, Your Honor. That would be the theory established by the landlord-tenant duty under North Carolina law. However, looking again at this prior conduct, we see that there is a clear basis for foreseeability. Let's look at the similarities between the September incident and the December incident involving the rape of Maria Nicole Durden. We see that in both instances, Aaron Purnell broke into an occupied home, assaulted the female, all of which occurred in front of her children. This act by itself is enough to establish foreseeability and impute such foreseeability on the government. Where foreseeability can be established, a duty can be held under North Carolina law. However, again, before we can even adjudicate these duties, currents... You have to, I gather, to carry out that theory, you would have to be able to demonstrate that the soldier was similar to a defective premises. In other words, does a landlord owe the duty to protect the premises from the public? Your Honor, the landlord owes a duty to protect the premises from foreseeable criminal acts of third parties. In the public? Your Honor, this duty would extend to the public. However, it does not make a landlord a general insurer of public safety. Again, at the heart of this test is foreseeability. The landlord can only be on the hook... The landlord rents a piece of property in a very, very tough neighborhood in a city where there's been lots of crime, the highest level of crime in the city, and the tenant suffers injury in that place. Is the landlord responsible for that injury under your theory? Your Honor, it would depend on what acts of prior conduct could be established that would establish foreseeability. I could make a hypothetical breaking and entering every house in the neighborhood except yours, and then all of a sudden there's a breaking and entering into the tenant's house. The question is does the landlord owe a duty to protect the tenant from the public even though the landlord knows the public is dangerous? Your Honor, if the other houses that were broke into also belonged to the landlord, the landlord would absolutely owe a duty. Why? Because it would then be foreseeability. It would then be foreseeable to the landlord. It's foreseeable. It's a bad neighborhood whether he owns them or not. He knows that it's a high break-in territory. As a matter of fact, he's put bars on the windows. You can't create a fortress. He rents the house, and the person who rents it knows that it's a tough neighborhood. You're saying under North Carolina law, the landlord would owe a duty to the tenant for the violence of the public? Your Honor, North Carolina law imposes a duty on the landlord for the violence that occurs on his premises. When violence occurs on his premises, North Carolina law is clear that he has a duty to protect his tenants from these foreseeable acts. But again, before we can even adjudicate the foreseeability in this case, discovery must be had. Well, now you have to have a theory of state law. Under 12b-6, you're going to have to have a viable claim, don't you? State claim, the government's only liable, would only be liable to the extent that a person would be liable under state law. Yes, Your Honor, we do have this theory under state law. This landlord-tenant duty could clearly apply. However, we need discovery to further establish the facts that would speak to foreseeability. Based on this incomplete record, without discovery, plaintiff does contend that there is a viable theory under North Carolina law. However, discovery... Well, don't we just look at your complaint? We don't need to have discovery. We just look at your complaint and take the facts of the complaint, don't we? Yes, Your Honor, you would take the facts in the complaint, attach a presumption of truthfulness to those facts, and then the district court would have been in a position to adjudicate the merits. However, we see that the district court did not do that. The district court resolved any factual dispute against plaintiff. That is a clear error of law under Kearns. Therefore, the district court was not in a position to resolve these factual disputes based on Kearns. However, moving to the second theory of North Carolina law, as argued in this case, the duty to control created by the special relationship between the government and Aaron Purnell. This special relationship is predicated upon the existence of two factors. First, the government must have had knowledge of Aaron Purnell's violent conduct. Second, the government must have had the ability to control Aaron Purnell. Again, the same facts that would speak to foreseeability clearly establish that the government had knowledge of Aaron Purnell's violent conduct. We see that the government was well aware of Aaron Purnell's illegal alcohol and drug use, both on and off the base. We see that the government had expressed knowledge of the September 2009 incident and also had expressed knowledge given by Purnell on four different occasions of his intent to kill himself and 11 others of his unit on Fort Bragg. This would clearly establish that the government was well aware that Aaron Purnell did in fact have violent tendencies. However, the second element of this special relationship, did the government have the ability to control Aaron Purnell? That is a factual dispute in of itself. The record is clear. The plaintiff takes the position that the government took affirmative steps in attempting to control Aaron Purnell. Plaintiff contends that the government held that Aaron Purnell did have to have an NCO escort at all times while on and off Fort Bragg. Furthermore, plaintiff contends that Purnell was to be checked by his CQ every two hours while in his barracks. The government opposes these facts. However, that is a factual dispute. Based on Kearns, the district court was not in a position to resolve this factual dispute without at a minimum an evidentiary hearing, but based on this special nature of the case where the jurisdictional and meritorious facts of the claim are intertwined, Kearns is clear we need discovery in this case. Well, even assuming knowledge, as I understand it under North Carolina law, the government would be just like a private employer. What right does the government have to control Purnell other than through his employment? And these things occurred off-duty. Your Honor, plaintiff contends that the government took affirmative steps in crafting explicit restrictions that would protect Mr. Purnell from the public at large. We see that the government did take explicit steps in placing restrictions only on Purnell. These were not general internal regulations. This was affirmative conduct after Captain Wilsey recognized how dangerous Aaron Purnell was. The record is clear that he wanted to do more. However, he did impose these restrictions that were an affirmative attempt to control Purnell's activity both on and off Fort Bragg. So therefore, we do see that the government had the ability and even utilized this ability to control Mr. Purnell both on and off Fort Bragg. However, again, based on Kearns, this is clearly a factual dispute at this point in the case. The district court resolved this factual dispute against plaintiff. That is a clear error of law. Based on this error of law, this court should remand the case to the district court after establishing the 12B1 jurisdiction and then move to the 12B6 merits of the case. Kearns is clear that the district court was not in a position to decide the merits of this case. However, looking at this second duty under North Carolina law, the duty to control, plaintiff does contend that the government had the ability to control Aaron Purnell, utilized this ability to control Aaron Purnell, however, failed to do so after putting in these affirmative steps to do so. Based on North Carolina law, this would be a clear violation of this duty to control. This would establish a second potential area of liability under North Carolina law. Looking at the third duty under North Carolina law argued by the plaintiff in this case, the third duty of law is predicated upon the government's affirmative conduct in taking affirmative steps in attempting to control Aaron Purnell and negligently failing to do so. Based on Sheridan 1, all three of these duties can be argued and plaintiff should have the opportunity to argue these duties. However, the district court did not allow this opportunity. The district court created a clear error of law by moving to the 12B6 merits of this case under the pretext of 12B1 jurisdiction. Based on this clear error of law under Kearns and also in violation of Sheridan, plaintiff would respectfully ask that this court vacate the opinion of the district court and remand the case for further proceedings including discovery. Thank you. Thank you, Mr. Harrell. Mr. Royster. Good morning, Your Honors. May it please the Court. Josh Royster for the United States. The district court's dismissal of this case for lack of subject matter jurisdiction was proper for two reasons. First, the plaintiff's negligence claim does not fall within the limited waiver of sovereign immunity and second, it's barred by the intentional tort exception under the Federal Tort Claims Act. The plaintiff argues... Let me just ask you hypothetically. I understand Sheridan may have left this issue open. If you have a Coca-Cola truck driver assault a customer, he punches him in the face and the victim sues Coca-Cola and said, I'm suing you for failure to supervise your employee, negligent supervision of the employee because he had done that three times before and you left him in the position where he could do it again. Does that state a negligence cause of action the victim's claim against Coca-Cola for negligent supervision under North Carolina law? I believe that it does. The difference though is that when you deal with the government and you deal with whether the government is liable in those situations, this court has answered the question about negligent supervision and then when that situation happens and it is a negligent supervision case, then it's barred by the intentional tort exception because... That's what I don't follow. In other words, I understand that the government would not be responsible under any kind of respondent superior for the assault and battery of the soldier, but under a theory, under North Carolina law of negligent supervision, negligence is not an intentional tort and it seems to me if it had a cause of action, if there was a cause of action, number one, under North Carolina law for that, it seems to me maybe that is what they're after in this case and the government is liable to the same extent another person would be liable under state law, right? To the same extent Coca-Cola would be liable under state law, the government would be liable under the Tort Claims Act. Yes, but for the intentional tort exception. Well, except under North Carolina law, it's not an intentional tort. Well, it gets, well, it gets them over the first hurdle of whether they have stated a claim within the limited waiver of sovereign immunity. If they are liable, the government is liable as a private person would be under the state law where the tortious conduct occurred. It gets them over the first hurdle, but the second hurdle, then the analysis still has to proceed to the intentional tort exception and if it's tied to the, I'm sorry. Except, what if for North Carolina, just hypothetically now, what if North Carolina says that claim is not an intentional tort? It's a negligence claim. What's that do for the government? It still, again, it gets them over the first hurdle, but if it's, I understand. If it still arises out of the intentional tort, then it's barred by the intentional tort exception and clearly respondeat superior it would, but under Sheridan, under the Supreme Court's analysis in Sheridan, if it's not entirely independent of, the assault, the intentional tort is a broader than just respondeat superior. It has anything arising out of it. Absolutely. Let me change the facts a little bit. What if the claim involves a situation where it doesn't matter whether the employee was an employee of the government or whether it was a member of the public. Let's take this case in particular. If somebody from the public had been the assaulter in this case, the government would be liable if they made the necessary allegations of failure to protect and supervise that member of the public, right? That's a completely different situation. I understand. Yes, sir. So, Sheridan makes the distinction is whether the tort is but for whether he's an employee. And one way to test that is to see whether the claim would also apply with respect to a member of the public. Correct. Now, is that one of their theories in this case? I believe so. I believe that the claim that they are essentially making is a negligent supervision claim. The problem comes... Or negligent protection of tenants claim. In other words, their argument is that regardless of whether it's an employee or a member of the public, that the government had notice of this type of exposure and failed to protect the tenant on the base. I think it's the same idea. They are alleging that the government had information about its employee and as a result of that, that the government had a duty to control him. Whether you call that a premises liability claim or whether you call it... It gets away from the horizon out of the salt and battery and gets into the foreseeable safety. In other words, the government knows that the tenant is not safe because it knows the character of some of its employees. And that's a little different, I think. It's subtle. It's a very... Absolutely, it's subtle. But the problem is all of the information that the government knows about Purnell comes as a result of the employment relationship. That's the difference. In the situation, if the person is not an employee of the government, then obviously the issue doesn't arise because the government is going to learn information about that person outside of the employment relationship. But if that person is an employee of the government, if the assailant is an employee, then we have to look under Sheridan and under this court's decision in Sheridan too when it comes back, we have to look at whether it is based on the employment relationship. And here, everything, all of the information that the government knows about Purnell arises out of the employment relationship. Had Mr. Purnell not been a member of the Army, the government would not have known these things about him. There would be no special relationship. It would not have known any information that would make an assault foreseeable. So under Sheridan, because of that requirement that it be entirely independent of the employment relationship, then the claim is barred under the intentional tort exception. With respect to the first reason that it's barred, your Honor raised the question regarding whether this was a 12B1 or a 12B6. It is a 12B1. I suspect we're probably going to, we may get to that. Well, you know, this has been an ongoing problem. The Supreme Court has recognized it. We've recognized it in Holloway. It's a very murky area. I agree. Having read all the different cases, frankly, I agree it's murky. But I think where it's clear here is that this is a 12B1 motion. The reason being is we never get to the merits. Whether there is a legal duty... The 12B6 really isn't the merits. The 12B6 is the sufficiency of the complaint to state a claim. So you take the complaint for the 12B6 analysis as true. The 12B1, the court gets some ability to look beyond the complaint and make fact-finding and so forth. I jumped ahead a little bit because we did submit information to the court that called into question the information that had been submitted by the plaintiff. And we can do that. And it still remained a 12B1 motion. The district court then is required, obligated, to decide those disputed issues of fact. The murkiness comes when the jurisdictional facts are intertwined with the merits. And here, the point I was making is we never get to the merits. We never get to the merits of the case because we never got to whether there was a duty to begin with. The district court had to analyze whether there was a duty in the first instance. So it took the information that the plaintiff had provided and it took the information that the Army had provided. And I want to make one particular note. When you look at the counseling form, that's at the joint appendix at page 52, I believe, Purnell actually signs the counseling form. And it says precisely what those orders were from the Army. But then subsequently, for some reason, he comes back and says that they were something different. And so the point is the parameters of what the orders were were contained within that counseling form that he signed. He can't then come and create an issue of fact by saying something was different than it actually he had agreed to begin with. So the point I'm making is we never get to the merits of the case because we never determined whether there was a duty. That was the district court's obligation to do. And it determined, based on the information before it, that it could do that. And so we never got to the merits. So you're saying determination of duty is a jurisdictional question? That's an element, isn't it? Well, it is an element. What I'm saying is it doesn't go to the merits of the case. It's a legal question for the court to decide whether they even got over that hurdle. But the duty is tied with factual questions, aren't they? In some instances, it can be. But in order for the plaintiff, in this case, to get over that jurisdictional hurdle, they have to allege facts or bring facts to the court that would put it within a claim under North Carolina law. And here they didn't do that. Even if you take, with respect to the landlord liability claim, even if you accept those allegations as true, then it's not enough to get to the foreseeability. When you look at the Moore case and you look at the Davenport case, those cases stand for the proposition that it's not just any violent propensity. It has to be the propensity for the level of attack on the plaintiff. So it's important that the level of attack be consistent with or similar to prior events or prior actions of an assailant. So here, the statements of Purnell and the prior conduct of Purnell in September when he goes into that home and assaults the woman, those do not rise to the level of propensity that are contemplated and would give the government... Is a burglar rising a home when the occupants are at home? It does not give rise to the level of propensity of a forcible rape. It does not, Your Honor. When you look at the Moore case, in the Moore case, there was actually... The 17-year-old in the Moore case, I'm talking about the Supreme Court case where the kid goes in and rapes the woman, he had previously assaulted someone. And the court there said that prior assault did not rise to the level of an attack as a forcible rape. And so for those reasons, we don't believe that it rises to the level here. And the same would apply with respect to the special relationship. A similar analysis, if you will, would apply. Again, you have to have two things for there to be a special relationship. The first is that you have to have a knowledge of the violent propensities. The same analysis would apply as it would with the premises liability. But you  And this goes to the question that you asked earlier, Judge Floyd. Did they have the ability to control him? Under North Carolina law, that requires the legal ability or legal right to control more of a custodial relationship. The Army did not have the ability to control Mr. Purnell in his off-duty time. They could not. They didn't have the... It must be a different Army. You mean to tell me the Army can't say, no, you're confined to barracks this weekend for not doing your job this week? It must be a different Army. Well, within the parameters of him being an employee, they can they do have certain abilities to put certain restrictions on him. But what I'm saying is those restrictions, they can't lawfully restrict him to his barracks in a way that restricts his liberties in his off-duty time. That would be illegal. That would be tantamount to custody. And they didn't have the legal right to do that. So that's the... I've never served in the military, but from what I understand, I agree with you. It doesn't necessarily seem intuitive. But the point is, the Army has the same lawful parameters that law enforcement would. And here, Mr. Purnell had not been charged with any crime, he had been cleared by mental health, and he had been allowed to leave by state authorities under bond. So he was not in any custodial situation. The Army didn't have the ability to control him in his off-duty time, which is precisely when this happened. And that way, the case is similar to Moore as well, where in the middle of the night, the son leaves the house, and he goes and rapes this woman. And the court there in the Moore case said short of standing over this kid for 24 hours a day, the parents did not have the ability to control him. So in that way, this case is similar to that as well. Your Honors, if there are no other questions, I'm done. We do ask that you affirm the District Court's decision. Thank you. Can I, before you get into your spiel, and I'll give you a little extension, but what is the language of the exception, the assault exception? The language of the exception precludes any claim that arises out of an assault or battery. However, Sheridan is clear, the Supreme Court Sheridan was clear in interpreting that language. That language can have a broad import. The Supreme Court recognized that. However, the Supreme Court clearly moved away from that broad import and recognized that where the intentional act does not fall within the FTCA's general waiver of sovereign immunity in the first instance, the intentional tort exception does not apply. The independent claim remains independent, and liability and jurisdiction can be had under the FTCA. Do you think the jurisdictional issue in this case rises and falls with our construction of Sheridan? Your Honor, can you repeat that? I'm sorry. Pardon me? Can you repeat your question? Yes. Do you think that the resolution of this dispute rises and falls or is resolved by a look at Sheridan? Your Honor, a look at the Sheridan's procedural posture and when it was remanded back down to Sheridan too, the issue is pretty clear that plaintiff does have the opportunity to bring a claim based on Sheridan. Now, what happened between Sheridan at the Supreme Court and when it came back on remand to the Fourth Circuit was discovery. Plaintiff is entitled to discovery to further discover the jurisdictional elements of this case. On rebuttal, I would mainly like to address some of the factual disputes brought up. On rebuttal, I would like to mainly address some of the factual disputes brought up in opposing counsel's argument. Opposing counsel argued that the government had no ability to control Aaron Purnell while he was in his barracks. However, the government concedes on page 65 of the record that the government had no ability to control Aaron Purnell while he was in his barracks. Therefore, we see that the government clearly had the ability to control Purnell's conduct whether he was on duty, off duty, or in his barracks. The government concedes that it had this ability to control. Again, there are other factual disputes in the record. The government contends that the restrictions were put in place only so that Aaron Purnell would not go AWOL during his administrative separation procedure. Aaron Purnell contends that these restrictions were put in place because Captain Wilsey thought he was so dangerous to the community that he could not be released. Captain Wilsey even recognizes that he thought Aaron Purnell was too dangerous to be released into the community. He recognizes that he wanted to put greater restrictions on Aaron Purnell but was told that he could not do that. The record does not say who told him that. The record does not say why he thought Aaron Purnell was so dangerous. Who is he trying to protect? That is why discovery is needed in this case. And Kearns is clear that based on these factual disputes, discovery is an indispensable element. Based on this need for discovery, plaintiff would respectfully ask that this court vacate the decision of the district court and remand the case for further proceeding. Well, if I understand the government's position, because there had not been a forcible rape by this Purnell, and apparently there had not been, they couldn't foresee that there'd be a forcible rape, notwithstanding all the other misconduct, if I understand your argument. So does your case rise and fall on the fact that there had not been a forcible rape and they did not anticipate that? Your Honor, I believe your question speaks to the element of foreseeability and whether the government could have been expected to foresee a forcible rape based on the prior forcible conduct in September 2009. Yes, the government should have been able to foresee another forcible act, another forcible assault. The Supreme Court in Foster was clear that it is axiomatic that the plaintiff need not prove that the defendant foresaw the exact form of the injury that actually occurred. The defendant only must foresee that some injury or consequences of a generally injurious nature might be seen. And again, opposing counsel cites to the North Carolina Court of Appeals in Moore v. Crumpton for his proposition that foreseeability cannot be established. However, looking at the element that is not present in this case, it's discovery. Moore is clear that discovery was had and then foreseeability was submitted as a question of fact to the jury. We don't have either of these elements in this case. Plaintiff will respectfully ask that this Court remand the case and allow discovery and then adjudicate. Thank you. Thank you. Okay. Alright, we'll come down and greet counsel. I do want to recognize that this was part of the clinic performance and thank you for the support that that clinic has provided to the Court. We'll come down and greet you and then take a short recess.
judges: Paul V. Niemeyer, Roger L. Gregory, Henry F. Floyd